RAPHAEL TOLEDANO *v.* JAMES DESBAN.

The vendor is bound to perfect the title of his vendee, before he can call upon the latter, for payment of the purchase money.

APPEAL from the District Court of the First District, *Buchanan,* J.

*J. F. Pepin*, for the plaintiff.

*Greiner*, for the appellant.

SIMON, J. The plaintiff seeks to obtain the rescission of a certain sale of real property, and forty shares of Union Bank stock, bearing mortgage thereon, made to him by the defendant, on the 18th of June, 1839. He states that the defendant never complied with the conditions of the sale, and never transferred to him the forty shares of the stock of the Union Bank, which, resting on the property, form an essential part of the sale ; and that on account of this failure on the part of the defendant to fulfil the conditions of the sale, he, (the plaintiff,) has been unable to dispose of the property.

The defendant pleaded the general issue, and further averred, that he never was put in default with regard to any of the conditions of the sale ; that plaintiff never made any application to the Union Bank to obtain its assent to the transfer of the stock ; that had he done so, and obtained the assent of the Bank, he could have obtained the transfer of the stock by exhibiting the copy of his act of sale, and of the act of sale of the same property to the defendant ; that the plaintiff never had any opportunity to sell the property as by him alleged ; and that he, (the defendant,) is ready, and always has been, to fulfil the conditions of the sale which by law he is bound to perform.

There was judgment below, in favor of the plaintiff, according to the prayer of his petition ; from which, after an unsuccessful attempt to obtain a new trial, the defendant has appealed.

The act of sale under consideration, after giving the description of the property sold, recites that the defendant sells : " *De plus quarante actions dans le fonds capital de la Banque de l'Union de la Louisiane qui reposent sur ladite propriété, et que le dit sieur Desban s'oblige à transférer, immédiatement, sur les livres de la Banque audit sieur Toledano.*" The condition of the sale is stipulated to be $7913,33, to be paid : " 1° $1600 *en se mettant au lieu et place du vendeur pour le payement de pareille somme par celui-ci à la Banque de l'Union, avec les intérets depuis le mois de Janvier* 1837, *la quelle somme, avec les intérets depuis ladite époque l'acquéreur promét, et s'oblige, d'acquitter à la dé charge du vendeur.*"

The evidence shows, that the plaintiff had employed Eugène Villatté to see the defendant on the sale of the stock in question, in order to have the same transferred to him.   The witness Villatté states, that defendant replied that he could not transfer the shares, as Mr. Banks, who had sold the property to him had not transferred the stock.   The witness saw Banks several times, and requested him to make a transfer of the stock to Desban, and had an act ready for that purpose.   It was presented to Banks, and defendant did not come at the time appointed, and Banks did not make the transfer in consequence.   Witness spoke to Desban several times, and he often made appointments, but did not come at the time appointed,   Witness wrote to him accordingly, and acted as plaintiff's agent in the matter.   He states also, that two persons, Ferrière and F. Gardère, wanted to purchase the property, but did not, because the transfer of the stock had never been made to the plaintiff.

The Cashier of the Union Bank testifies, in substance, that the forty shares in question stood on the books in the name of Banks. After Banks' death, and a few months ago, the shares were transferred to the defendant on said books, on the presentation of an act of transfer to him.   The consent of the board of directors is necessary for the transfer, and witness could not allow it without such consent.   The Bank generally requires that all the arrears should be paid, though this is sometimes dispensed with,   He transferred the stock to defendant without payment of the arrears, because it was the same property.   Witness would not transfer this stock to plaintiff, unless the arrearages were paid, and thinks the board would not.   Defendant should pay up the arrearages, as the vendor always pays up the arrears on the stock.   It appears also, from the testimony of the Cashier, that on the 7th of June, 1842, Union Bank stock was selling at six to nine per cent premium, and that on the 15th of June, 1839, and for some time afterwards, the same was selling at a premium of about twenty per cent.

Without its being necessary to inquire into the question, whether the defendant was properly and legally put in default, and whether the plaintiff should have paid the amount by him assumed to be paid to the Union Bank, previous to obtaining the transfer

of the stock on the books of the Bank, we think that the decision of this cause must turn upon the inquiry, whether the defendant had a right to sell and transfer the stock in question at the time of the sale, and, if he had not any right then, whether, he has acquired any since ?

The sale stipulates, that the vendor obligates himself to transfer the stock *immediately*, on the books of the Bank, to the vendee. At that time, the shares were not in his name, but were in the name of Banks, and the defendant's title, if he had any, was unknown to the directors of the Union Bank. So far, the defendant was perhaps without any right to dispose of the stock, as the sale thereof would have been a sale of Banks' property. At all events, the stock by him sold, did not stand in his name on thè books of the Bank ; and this shows, that he could not make a transfer thereof, as he could not comply with the requisites of the charter of the Union Bank. In the case of the *Union Bank* v. *Desban*, (2 Robinson, 486,) decided last year, we held that, under the charter of the Union Bank, it was necessary first to obtain the consent and approbation of the directors. We considered this as a prerequisite to the sale and transfer of the stock ; and said, that under the 29th section, " we understand that when a stockholder intends or wishes to transfer his stock, the first step he has to take, is to apply to the board of directors, to lay before them a statement of the circumstances under which the transfer is to be made, and of the new mortgage or securities which are to be furnished." This never was, and could not have been done by the defendant, who was thereby in the absolute impossibility of transfering the stock *immediately* to the plaintiff ; and it is clear that he had no right to sell said stock, as he was not in a position to give a title to the purchaser. Indeed, how could the defendant validly sell and transfer the forty shares of stock to which he had no apparent title on the books of the Bank ? How could he obtain the assent of the directors ? It may be true, that he had a title thereto which we declared to be valid in the case above quoted, on the ground that his vendor had complied with the requisites of the charter ; but here it is shown, that he never did apply to the board of directors for their approbation, and that, although their consent is necessary for the transfer, this has not, *even yet*, been obtained.

It has been urged that, under the stipulations of the act of sale, it was the duty of the plaintiff to pay the arrearages due to the Bank, in order to obtain a transfer of the stock. The obligation to transfer the stock immediately, stipulated in the act of sale, appears to be distinct from the promise to pay the price, and does not depend upon the payment to be made to the Union Bank by the vendee. It may be considered as a part of the essential requisites necessary to perfect the title of the plaintiff to the stock by him acquired, and the defendant was bound to comply with this obligation, before being entitled to call upon the plaintiff for the payment of the purchase money. Suppose the plaintiff to have been ready to pay the amount by him assumed towards the Bank, could he have obtained the transfer of the stock sold, by making a tender of the sum due; and could he have sold and transferred it to others? Certainly not. The defendant was unknown to the Bank as a stockholder; and had he been known as such, he had never complied with the section of the charter, which requires the assent of the board of directors to the transfer of his stock to the plaintiff. It will be conceded, that the plaintiff never was recognized as a stockholder by the Bank, although defendant had promised to cause it to be done. This was, in our opinion, a radical defect in the title attempted to be transferred or sold by the defendant to the plaintiff, which necessarily prevented the latter from disposing of the property, as shown by the evidence. This defect, or nullity, has never been removed, notwithstanding the efforts of the plaintiff. The contract is yet imperfect, and as such, it is clear, that the sale under consideration cannot stand, and must be cancelled.

The view we have taken of the respective obligations of the parties, is in accordance with our decision in the case of *The City Bank* v. *Toledano*, (1 Robinson, 570,) where the same facts were made to appear in support of the defence. There, we held, that as the rescission of the contract of sale was not, and could not be demanded, in that suit, and as the stock might hereafter be transferred to the defendant, our judgment should only be one of nonsuit against the plaintiff; but the right to recover was denied to the plaintiff, until the completion of Desban's contract relative

to the Bank stock. As to the plea of prescription, we think it is untenable. Art. 2474 of the Civil Code is not applicable.

*Judgment affirmed.*